NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 12 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GILBERT SAUCILLO; JAMES R.
RUDSELL, on behalf of themselves and all
others similarly situated,

Plaintiffs-Appellees,

v.

SADASHIV MARES,

Objector-Appellant,

and

JOHN BURNELL; JACK POLLOCK,

Plaintiffs,

v.

SWIFT TRANSPORTATION COMPANY
OF ARIZONA, LLC, an Arizona
corporation,

Defendant-Appellee,

and

SWIFT TRANSPORTATION COMPANY

No.   22-55560

D.C. No.
5:10-cv-00809-VAP-OP

MEMORANDUM[*]

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

INCORPORATED; DOES,

Defendants.

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Submitted May 10, 2023[**]
San Francisco, California

Before: FRIEDLAND and BENNETT, Circuit Judges, and BENNETT,[***] District Judge.

Objector-Appellant Sadashiv Mares appeals the district court's approval of a class action settlement between Defendant-Appellee Swift Transportation and Plaintiff-Appellees Gilbert Saucillo and James Rudsell.[1] The district court approved a $7.25 million settlement, of which class counsel would receive approximately $1.8 million in attorneys' fees. We have jurisdiction under 28

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

[1] Mares has requested that we take judicial notice of several records from other related litigation, including from the Rudsell action prior to consolidation. "We may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see* Fed. R. Evid. 201(d). Accordingly, Mares's request for judicial notice is granted.

U.S.C. § 1291.  Reviewing for abuse of discretion, *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019), we affirm.

We previously vacated an order by the district court approving the same settlement agreement because the court applied the wrong legal standard, failing to engage the heightened fairness inquiry that is required when a settlement agreement is reached prior to class certification.  *Saucillo v. Peck*, 25 F.4th 1118, 1122, 1131 (9th Cir. 2022).  On remand, the district court conducted the requisite "probing inquiry," scrutinizing the settlement agreement for "any 'subtle signs that class counsel . . . allowed pursuit of their own self interests . . . to infect the negotiations.'"  *Roes*, 944 F.3d at 1043, 1048 (first quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012), and then quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).

The district court did not abuse its discretion in approving the settlement agreement.  In scrutinizing the agreement for subtle signs of collusion, the court appropriately considered the interaction between the agreement's clear sailing provision and the size of the attorneys' fees and determined that there was no cause for concern, given that the attorneys' fees were proportionate and no portion of the settlement fund could revert to Swift.  *See Allen*, 787 F.3d at 1224 & n.4.  The remaining "red flags" that Mares raises do not otherwise indicate collusion.

First, the fact that Plaintiffs settled this case after the denial of class

3

certification was not inherently suspect: The district court was familiar with the case's lengthy procedural history and noted that the parties had "tenaciously litigated this case" for years, including a lengthy motion for class certification, a petition to our court to appeal the denial of class certification, and significant discovery. Even if plaintiffs in other similar ongoing class actions might have initially seen more success than Plaintiffs here, continued success was uncertain following our opinion in *International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration*, 986 F.3d 841 (9th Cir. 2021), which upheld the Federal Motor Carrier Safety Administration's determination that federal law preempts California's meal- and rest-period laws. *See generally, e.g.*, *Valiente v. Swift Transp. Co. of Ariz., LLC*, 54 F.4th 581 (9th Cir. 2022).

Next, the fact that the settlement states that it settles claims in the Consolidated Complaint for violations of certain state statutes that were not named in previously operative complaints does not evince collusion or result in unfairness, given that our court's precedent necessarily limits the preclusive effect of a release agreement to claims that share an "identical factual predicate" with those advanced in this case. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-92 (9th Cir. 2010).

Nor did the district court err in addressing Mares's concerns regarding Swift's exposure estimate or in approving that estimate. Rather, in noting the

significant risks that Plaintiffs faced in continued litigation—including the district court's denial of class certification in similar cases and the aforementioned preemption determination—the district court appropriately "assess[ed] the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation" and "acted properly in evaluating the strength of the plaintiffs' case in its entirety rather than on a claim-by-claim basis." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (emphasis omitted).

Finally, any uncertainty in the number of class members was minor and not indicative of collusion between the parties. Mares suggests that there are 20,900 class members rather than 19,544 and expresses concern that the omitted 1,356 drivers "risk . . . having their rights released with no recovery." But even assuming that this discrepancy indeed exists and that 1,356 class members did not receive notice of the settlement agreement, those class members would not be bound by its terms—so Mares's concerns are misplaced. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

After nearly a decade of litigation and several intervening legal developments that were not favorable to Plaintiffs, the parties reached a settlement agreement resulting in nearly $4.3 million for the class as a whole and an average award of more than $200 per driver. "[T]he question whether a settlement is fundamentally fair within the meaning of [Federal Rule of Civil Procedure] 23(e)

5

is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819. Here, given the district court's "expos[ure] to the litigants, and their strategies, positions and proof," we cannot say that the court abused its discretion in approving the settlement agreement. *Id.* at 818 (quotation marks omitted). Rather, the court scrutinized the settlement agreement for subtle signs of collusion and appropriately concluded that the settlement agreement was the product of non-collusive negotiations.

**AFFIRMED.**